Case No. 21-cv-01093-LPS

-----

# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

-----

**In re**

**MALLINCKRODT PLC, *et al.***

**Debtors.**

-----------------------------------------

**ATTESTOR LIMITED and HUMANA INC.,**

*Appellants*,

**v.**

**MALLINCKRODT PLC, *et al*.,**

*Appellees*.

_____

## APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----

### APPELLANTS' REPLY BRIEF

| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | WILLKIE FARR & GALLAGHER LLP |
|---|---|
| Donna L. Culver (No. 2983) | Matthew A. Feldman (admitted *pro hac vice*) |
| Robert J. Dehney (No. 3578) | Matthew Freimuth (admitted *pro hac vice*) |
| Matthew B. Harvey (No. 5186) | Benjamin P. McCallen (admitted *pro hac vice*) |
| Matthew O. Talmo (No. 6333) | Richard Choi (admitted *pro hac vice*) |
| Taylor M. Haga (No. 6549) | Philip F. DiSanto (admitted *pro hac vice*) |
| 1201 N. Market St., 16th Floor | 787 Seventh Avenue |
| Wilmington, DE  19899-1347 | New York, NY 10019 |
| Telephone: (302) 658-9200 | Telephone: (212) 728-8000 |
| dculver@morrisnichols.com | mfeldman@willkie.com |
| rdehney@morrisnichols.com | mfreimuth@willkie.com |
| mharvey@morrisnichols.com | bmccallen@willkie.com |
| mtalmo@morrisnichols.com | rchoi1@willkie.com |
| thaga@morrisnichols.com | pdisanto@willkie.com |

*Additional Counsel on Following Page*

**EIMER STAHL LLP**
Benjamin E. Waldin (admitted *pro hac vice*)
Scott C. Solberg (admitted *pro hac vice*)
James W. Joseph (admitted *pro hac vice*)
Sarah H. Catalano (admitted *pro hac vice*)
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
bwaldin@eimerstahl.com
ssolberg@eimerstahl.com
jjoseph@eimerstahl.com
scatalano@eimerstahl.com

*Counsel to Appellants*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

SUMMARY OF THE ARGUMENT ........................................................1

ARGUMENT ...........................................................................................3

    I.    THE BANKRUPTCY COURT ERRED IN FINDING
        APPELLANTS ACTED IN BAD FAITH. ...........................................3

        A.    The Evidence Appellees Cite Demonstrates How
                Little Information Appellants Had Been Provided. ...................3

        B.    The Court's Bad Faith Finding Was Procedurally
                And Substantively Improper. .......................................................8

    II.    THE BANKRUPTCY COURT ERRED IN
        DISALLOWING APPELLANTS' CLAIMS ON THE
        BASIS THAT THEY LACKED *PRIMA FACIE*
        VALIDITY. .........................................................................14

        A.    Appellants' Proofs of Claim Were *Prima Facie*
                Valid. ........................................................................14

        B.    There Was No Basis For Summarily Disallowing
                Appellants' Claims Without an Evidentiary
                Hearing. ...................................................................18

    III.    THE BANKRUPTCY COURT APPLIED THE
        WRONG STANDARD IN DENYING APPELLANTS
        LEAVE TO AMEND. ...........................................................22

    IV.    THE BANKRUPTCY COURT'S *PIONEER* ANALYSIS
        WAS ERRONEOUS. ............................................................24

CONCLUSION .........................................................................27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Archer v. Defenders, Inc.*,
  2020 WL 3128029 (D. Del. June 12, 2020) ........................................................8

*Caplan v. B-Line LLC (In re Kirkland)*,
  572 F.3d 838 (10th Cir. 2009) .........................................................................20

*Coleman v. Greene*,
  845 F.3d 73 (3d Cir. 2017) ..............................................................................15

*Copley Press, Inc. v. Peregrine Sys. (In re Peregrine Sys., Inc.)*,
  311 B.R. 679 (D. Del.2004).............................................................................26

*Cregar v. Barclay (In re Cregar)*,
  B.A.P. No. CC-10-1103-MkHKi, 2010 WL 6452905 (B.A.P. 9th
  Cir. Nov. 19, 2010) ...........................................................................................8

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
  246 F. Supp. 3d 680 (E.D.N.Y. 2017) ...............................................................3

*Ellis v. Westinghouse Elec. Co., LLC*,
  11 F.4th 221 (3d Cir. 2021) ....................................................................1, 3, 14

*Hilton v. Hongisto (In re Hongisto)*,
  86 F. App'x 331 (9th Cir. 2004) ......................................................................21

*In re Allegheny International, Inc.*,
  954 F.2d 167 (3d Cir. 1992) ....................................................................... 15-16

*In re Bennett*,
  590 B.R. 156 (Bankr. E.D. Mich. 2018)...........................................................13

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004) ............................................................................18

*In re DePugh*,
  409 B.R. 84 (Bankr. S.D. Tex. 2009) ...............................................................21

**TABLE OF AUTHORITIES** (continued)

**Page(s)**

*In re Exide Techs.*,
601 B.R. 271 (Bankr. D. Del. 2019), *aff'd*, 613 B.R. 79 (D. Del.
2020) ............................................................................................................23

*In re FLYi, Inc.*,
No. 05-20011-(MFW), 2008 WL 170555 (Bankr. D. Del. Jan. 16,
2008) ............................................................................................................23

*In re Gilbreath*,
395 B.R. 356 (Bankr. S.D. Tex. 2008) ..................................................... 21-22

*In re Gold & Honey, Ltd.*,
410 B.R. 357 (Bankr. E.D.N.Y. 2009) .............................................................11

*In re Henry*,
311 B.R. 813 (Bankr. W.D. Wash. 2004)....................................................13, 21

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) ...........................................................................17

*In re Kincaid*,
388 B.R. 610 (Bankr. E.D. Pa. 2008) ...............................................................20

*In re Melillo*,
392 B.R. 1 (B.A.P. 1st Cir. 2008)....................................................................13, 21

*In re Nortel Networks, Inc.*,
469 B.R. 478 (Bankr. D. Del. 2012)..................................................................15

*In re O'Brien Env't Energy, Inc.*,
188 F.3d 116 (3d Cir. 1999) .............................................................................25

*In re Queen Elizabeth Realty Corp.*,
586 B.R. 95 (S.D.N.Y. 2018) ...........................................................................24

*In re Ruth*,
473 B.R. 152 (Bankr. S.D. Tex. 2012) .............................................................21

*In re Today's Destiny, Inc.*,
No. 05-90080, 2008 WL 5479109 (Bankr. S.D. Nov. 26, 2008) ......................21

**TABLE OF AUTHORITIES** (continued)

**Page(s)**

*In re Tribune Co.*,
 No. 08-13141-(KJC), 2013 WL 1909617 (Bankr. D. Del. May 2,
 2013) ................................................................................................21

*Krupski v. Costa Crociere S.p.A.*,
 560 U.S. 538 (2010)..........................................................................23

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
 847 F.3d 1221 (10th Cir. 2017) ........................................................17

*LTV Corp. v. Gulf States Steel, Inc. of Ala.*,
 969 F.2d 1050 (D.C. Cir. 1992)........................................................10

*Payne v. Lampe (In re Lampe)*,
 665 F.3d 506 (3d Cir. 2011) ........................................................ 15-16

*Pioneer Investment Services Co. v. Brunswick Associates Ltd.*
 *Partnership*,
 507 U.S. 380 (1993)...................................................................... 24-25

*Rogal v. Am. Broad. Cos.*,
 74 F.3d 40 (3d Cir. 1996) ...................................................................8

*United States v. Mallory*,
 765 F.3d 373 (3d Cir. 2014) .............................................................15

**Statutes and Other Authorities**

11 U.S.C. § 502 .......................................................................... 18-20

Fed. R. Bankr. P. 2002 .......................................................................10

Fed. R. Bankr. P. 2004 ...............................................................*passim*

Fed. R. Bankr. P. 3001 ................................................................16, 20

Fed. R. Civ. P. 12 ...............................................................................14

Fed. R. Civ. P. 15 ...............................................................................23

§ 1 of the Sherman Act ......................................................................17

iv

# SUMMARY OF THE ARGUMENT[1]

The central question in this appeal is whether creditors act in bad faith when they file protective proofs of claim against debtor entities without first seeking discovery under Bankruptcy Rule 2004 to substantiate those claims and then amend them accordingly.  Appellees defend the Bankruptcy Court's ruling on the basis that Appellants purportedly failed to follow this so-called "proper procedure"—but Appellees cite no support for the existence of that procedure in the Bankruptcy Code or Rules, court decision, standing order, local rule or other regulation or law.  To the contrary, Appellees' position is completely undermined by applicable law, and cannot be squared with the Third Circuit's recent decision in *Ellis*, which endorsed the filing of protective proofs of claim, such as those filed by Appellants here.

Moreover, the supposedly proper procedure announced by the Bankruptcy Court below, which the Debtors now wrap themselves in and defend on appeal, is inconsistent with the practical realities of how large, complex bankruptcy cases are administered.  The Bankruptcy Rules require that debtors provide just 21 days' notice of the deadline to file proofs of claims.  This short time period does not typically allow parties to seek and obtain discovery regarding their claims, which can take weeks, if not months or longer.  The procedural requirements Appellees are

---

[1]     Capitalized terms used but not defined are defined in Appellants' opening brief.

seeking to impose are simply unworkable and, indeed, would grind large, complex bankruptcy cases like this one to a halt.  Under Appellees' framework, creditors would be required to engage in costly motion practice and pre-claim discovery, drowning the debtor and the bankruptcy court in Bankruptcy Rule 2004 motions and litigation.  That is not a result that serves anyone's interest.

The absence of any authority supporting the Bankruptcy Court's decision confirms that Appellants' conduct did not violate any clear process required by the Bankruptcy Rules, much less engage in bad faith conduct warranting dismissal of billions of dollars of claims.  That is particularly true here, where the Bankruptcy Court's holding of bad faith was based on its mistaken belief that Appellants asserted their claims against each Debtor entity in order to exert "leverage" and wreak havoc on the Debtors' bankruptcy cases—but where the Court had no evidence before it on those issues, which were raised for the first time by the Court *sua sponte* at oral argument.

Appellees also identify no support for the Bankruptcy Court's ruling that Appellants' claims were not *prima facie* valid or its disallowance of the claims on that basis without an evidentiary hearing.  Appellants claims were *prima facie* valid because they met the low threshold of putting the relevant Debtors on notice of Appellants' claims.  Moreover, even if the claims were not *prima facie* valid, that was no basis for summarily disallowing them—it merely meant that Appellants

would bear the burden at the evidentiary hearing to prove their claims.   The Bankruptcy Court's refusal to allow Appellants to do so constituted reversible error. Appellants at the very least should have been allowed to amend their claims or assert new claims—which they were denied the opportunity to do on the basis of the same unsupported bad faith finding used to dismiss their claims in the first instance.

## **ARGUMENT**

I.    **The Bankruptcy Court Erred in Finding Appellants Acted in Bad Faith.**

A.    **The Evidence Appellees Cite Demonstrates How Little Information Appellants Had Been Provided.**

In their opening brief ("OB"), Appellants established that—faced with a bar date that required them to assert claims or lose them—they followed the "well-established practice in bankruptcy" of filing protective proofs of claim where "a creditor thinks it might have a claim but is unsure." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 246 F. Supp. 3d 680, 691 (E.D.N.Y. 2017). The Third Circuit has endorsed this practice, holding that where a "creditor does not … know the amount or validity of [a] claim, … he can easily file a 'protective' claim putting the debtor on notice without conceding any issues." *Ellis v. Westinghouse Elec. Co., LLC*, 11 F.4th 221, 237–38 (3d Cir. 2021). The Bankruptcy Court nevertheless found, without basis, that Appellants filed their claims in bad faith. Appellees' effort to defend that decision fails.

3

First, Appellees argue that Appellants "knew" prior to the bar date that numerous Debtor entities were not involved with Acthar based on information Appellants purportedly had access to. AB 24. But the documents Appellees cite for this assertion (which were neither cited nor relied upon by the Bankruptcy Court), provide no support. For example, the declaration Appellees filed on the first day of the bankruptcy cases states merely that the "Specialty Brands [business] produces, markets, and sells . . . Acthar[,]" which the Debtors argue proves that Appellants knew entities in the Debtors' "Specialty Generics" business "had nothing to do with Acthar." AB 24. However, that single sentence does not say that Specialty Generics entities were not involved in, or received no benefit from, the Acthar business, and it certainly does not provide a basis to conclude that Appellants knew the same. Moreover, a single sentence from a self-serving declaration, which at the time was untested by discovery, is an insufficient basis for a finding of bad faith that disallowed billions of dollars of claims, including claims at 59 entities not covered by the statement. Indeed, had Appellants not filed claims at the Specialty Generics entities and discovery proved the declaration to be inaccurate, Appellants would have lost the ability to recover against those entities after the bar date (unlike in litigation outside of bankruptcy court, where Appellants would have had the opportunity to add additional defendants after discovery).

Appellants did state in their reply to the Claims Objection that they were "willing to work with the Debtors to withdraw claims against any entities on the Debtors' Generics side of the business," which the Debtors cite in arguing that Appellants acted in bad faith by not withdrawing such claims before they were disallowed at the July 23 hearing.   AB 11.   However, the Debtors omit that Appellants made clear they could not "currently assess which entities are truly Generics-specific and may warrant dismissal" due to "the Debtors' lack of transparency and the piecemeal approach to discovery they have taken," A3232, which included refusing to produce any merits-related discovery in connection with the Claims Objection.   It is that merits discovery that would show who at Mallinckrodt engaged in actionable conduct, on behalf of which entities, and which entities benefited from that conduct—the very facts that would allow Appellants to discern whether an entity was liable for the asserted claims.

Appellees similarly argue that information showing that specific entities had "nothing to do with Acthar" was also "readily available in public SEC filings."   AB 24.   That claim is also demonstrably wrong.   None of the proofs of claim subject to this appeal are asserted against publicly traded entities that file with the SEC; the only publicly traded Debtor entity is Mallinckrodt plc ("plc"), and the claims against it were not challenged below and are not part of this appeal.   Moreover, the pages Appellees cite from plc's SEC filings do not show that certain entities had "nothing

to do with Acthar."  Appellees do not actually point the Court to any language from those SEC filings, and for good reason.  The only relevant passage from the cited pages of the SEC filings states that the Specialty Brands' "product portfolio" includes Acthar.  A3269.  Indeed, the cited pages do not describe or even reference a single debtor entity other than plc.  Moreover, the Bankruptcy Court made no examination of the SEC filings let alone any factual findings of the information contained therein.

Second, Appellees argue that certain documents produced in the pre-bankruptcy litigation provided Appellants with information about the roles of certain Debtor entities with respect to Acthar.  AB 25–26.  But the three documents that Appellees cite are not part of the appellate record and two of those documents were not even before the Bankruptcy Court.  Moreover, even if this Court could consider them, they contain discussions among employees of "Mallinckrodt Pharmaceuticals," as opposed to specific Debtor entities, and contain no substantive detail about which entities were involved in the Debtors' Acthar enterprise, and how. One document, attached as **Exhibit A**, merely states in discussing Acthar and other drugs: "Ryan ensure we follow process needed for audit and MPIL requirements with regards to price increases," which the Debtors argue should have put Appellants on notice of the role of MPIL, one of the Debtors entities, in pricing decisions.  AB 25.  The other two documents, attached as **Exhibits B and C**, allude to ownership

6

of certain Acthar intellectual property, but do not discuss which companies were involved in its marketing, sale, and manufacture.

Appellees argue that, considering this information, "the Bankruptcy Court did not err in finding that Appellants' strategic decisions amounted to 'gamesmanship' and 'bad faith.'"  AB 27.   But the Bankruptcy Court made no findings as to what information Appellants had when they filed their claims, and there was no evidentiary record before the Court about whether Appellants filed their proofs of claim to preserve their rights (as Appellants contend) or whether they did so for strategic advantage (as the Bankruptcy Court found).  Indeed, the incomplete and anecdotal nature of the information in these documents only highlights the point that Appellants made repeatedly to the Bankruptcy Court: that it was reasonable of Appellants to preserve claims at all Debtor entities until they had a full and fair opportunity to take all relevant discovery, including discovery on the merits of their claims.  *See e.g.*, A6830–32, Tr.  56:23–57:4; A6864, Tr. 90:9–17.   While the Debtors argue that Appellants did not need merits discovery before deciding which entities it should assert claims against (AB 30), that argument is belied by the Debtors' reliance on the same type of documents from the limited pre-petition merits productions (discussed above) to argue that Appellants had adequate information to identity the appropriate defendant entities.

7

**B.    The Court's Bad Faith Finding Was Procedurally And Substantively Improper.**

Appellees' brief does nothing more than repeat the Bankruptcy Court's conclusory determinations that Appellants purportedly acted in bad faith.  AB 28. But the Bankruptcy Court's ruling cannot be upheld because the Court heard no evidence, failed to allow the parties to brief the issue, and failed to provide notice of the issue, as it was raised *sua sponte*.  *See Cregar v. Barclay (In re Cregar)*, B.A.P. No. CC-10-1103-MkHKi, 2010 WL 6452905, at *5 (B.A.P. 9th Cir. Nov. 19, 2010) (vacating bankruptcy court's order disallowing appellant's exemption claim based on finding that appellant acted in bad faith because bankruptcy court failed to hold evidentiary hearing on material facts underlying bad faith finding); *Rogal v. Am. Broad. Cos.*, 74 F.3d 40, 44 (3d Cir. 1996) (reversing finding of bad faith and sanctions imposed and holding that due process requires an evidentiary hearing on the issues).

"While conducting an evidentiary hearing before finding the existence of bad faith . . . is not always necessary, the Third Circuit has stated [that] . . . 'a court . . . may not do so if the ultimate finding of bad faith cannot be reached without first resolving genuine disputes as to the underlying facts.'"  *Archer v. Defenders, Inc.*, 2020 WL 3128029, at *6 (D. Del. June 12, 2020) (citing *Montrose Med. Grp. Participating Savings Plan v. Bulger*, 243 F.3d 773, 780 n.5 (3d Cir. 2001)).  Here, there was no evidence heard on any issues, including what Appellants knew at the

time of filing and whether they had a good faith basis for their claims.  A6916, Tr. 142:1–12.  Appellants were first accused of bad faith at the July 23 hearing.  That does not constitute fair notice or an opportunity to be heard.

Moreover, the underlying premise of the Court's ruling—that Appellants' proofs of claim somehow interfered with the Debtors' bankruptcy process—does not hold water.  Appellants' claims against ARD and plc (which were not objected to) would require adjudication regardless, so there is no reason why adjudicating the same claims based on the same events and conduct against other entities in the corporate structure would disrupt the bankruptcy in any material way.  Moreover, there is no support for the suggestion that Appellants' assertion of claims against Specialty Generics entities gave them a tactical advantage or otherwise prejudiced Appellees because those entities did not hold significant value.  Most of the Debtors' value resided within the Specialty Brands business line at entities such as MPIL, which Appellees effectively concede on appeal was involved in the Acthar business.

All of Appellees' arguments in support of the Bankruptcy Court's bad faith finding come back to the same point:  Appellants allegedly failed to follow "proper procedure."  But neither the Bankruptcy Court nor Appellants cite any authority supporting this purported "proper procedure."

There is no support for the notion that Appellants were required to seek Rule 2004 discovery either before filing their proofs of claim, or immediately afterwards.

The proofs of claim process is supposed to be easy, efficient and inexpensive for creditors.  *See, e.g.*, *LTV Corp. v. Gulf States Steel, Inc. of Ala.*, 969 F.2d 1050, 1058 (D.C. Cir. 1992) ("Proofs of claim are not intended to be elaborately detailed documents.  As one bankruptcy court has explained, a proof of claim for an unsecured creditor requires little more than a listing of name, address, amount of claim (or a listing as 'unliquidated' or 'contingent'), and a signature.  It should take less than five minutes to fill out.") (citation omitted).  Requiring all creditors who are unsure as to the validity, amount, or bases for their claims to seek Rule 2004 discovery would transform a quick and efficient process into a burdensome one, requiring motion practice and discovery as gate keeping functions to the right to even file a claim.

And it would not work as a practical matter under the applicable rules.  The Bankruptcy Rules require only 21 days' notice by mail of the deadline to file proofs of claims. *See* Fed. R. Bankr. P. 2002(a)(7).  Unless consensual, Rule 2004 discovery can only be authorized on motion.  *See* Fed. R. Bankr. P. 2004(a) (requiring motion and order for Rule 2004 discovery).  Seeking and obtaining court permission to conduct discovery, obtaining that discovery, and incorporating it into a proof of claim is simply impossible on the timeframe provided by the rules.

Moreover, the process the Debtors propose would grind large, complex cases to a halt.  The Debtors here did not require most of their creditors (opioid claimants)

to file proofs of claim, and yet more than 52,500 proofs of claim were filed in their cases. *Claims*, PRIME CLERK, MALLINCKRODT PLC (last visited January 25, 2022), https://restructuring.primeclerk.com/mallinckrodt/Home-ClaimInfo. In another opioid bankruptcy, *In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.), opioid claimants were required to file proofs of claims, and over 600,000 were filed. *Claims*, PRIME CLERK, PURDUE PHARMA L.P. (last visited January 25, 2022), https://restructuring.primeclerk.com/purduepharma/Home-ClaimInfo. If even a small fraction of claimants are unsure of the amount, basis, or validity of their claim, or which entities within a complex multi-national enterprise may bear responsibility, then under the Debtors' and the Bankruptcy Court's process they must seek and obtain Rule 2004 discovery in advance of filing claims, rather than doing as the Third Circuit has said and file protective proofs of claims. This would result in a deluge of motion practice, hearings, and discovery creating an enormous burden on debtors and bankruptcy courts. And because bar dates are often early in cases, the process would effectively thwart the breathing spell that debtors are afforded by the automatic stay, plunging the debtor instead into senseless litigation and discovery. *Cf. In re Gold & Honey, Ltd.*, 410 B.R. 357, 369 (Bankr. E.D.N.Y. 2009) ("The purpose of the stay is to give the debtor a breathing spell from litigation and collection activities.").

11

Appellees likewise cite no authority for their argument that Appellants were required to amend their proofs of claim after receiving the limited discovery authorized by the Bankruptcy Court.  That is because there is none, and certainly no authority that the decision not to amend amounts to bad faith.  Indeed, Appellants gained no advantage by not amending; nor were Appellees disadvantaged in any way, given that they already had notice of Appellants' claims, Appellants had set forth the evidence they gathered during discovery in their response the Claims Objection, and both parties came prepared to present evidence at the July 23 hearing.

Appellees argument is particularly meritless where, as here, the Claims Objection clearly stated that Appellants should include their evidence in their brief responding to the Claims Objection.  A0909.  The Debtors argue they "were not 'mandat[ing] a specific procedure'" (AB 32), but that argument cannot be squared with the instructions contained in their Claims Objection: "Every response to the [Claims] Objection **must contain** . . . **all documentation or other evidence of the Claim in question,** ***to the extent not already included with the claimant's proof of claim***, upon which claimant will rely in opposing the objection at the Hearing[.]" A0909 (emphasis added).[2]  The Debtors argue that such language "could not displace

---

[2]     The Debtors argue this language in their Claims Objection was boilerplate or "form language." AB 31–32.  That only proves Appellants' point: the procedure for addressing this type of claim objection is so well-established in bankruptcy court that the instruction mandating that procedure has reached the state of becoming boilerplate.

the relevant legal framework," but they cite no authority establishing a framework that requires amendment. AB 32.  And the case law, including that relied upon by the Debtors, supports the process Appellants followed.  *See In re Melillo*, 392 B.R. 1, 3 (B.A.P. 1st Cir. 2008) (affirming bankruptcy court's order that claim should be disallowed for claimant's failure to attach necessary supporting documentation to its response to Debtors' claim objection); *In re Bennett,* 590 B.R. 156 (Bankr. E.D. Mich. 2018) (claimant required to respond to claim objection rather than amend claim); *In re Henry*, 311 B.R. 813, 817–18 (Bankr. W.D. Wash. 2004) (applying "general rule" that claimants are to include evidence of their claim in their response to claim objection).

Debtors also weakly argue that, if nothing else, the Claims Objection did not *prevent* Appellants from amending their claims. AB 32.  But that cannot prove that amendment was *required* by any rule or established procedure, much less that the failure to amend constituted bad faith.  Moreover, there is no doubt that if Appellants responded by filing amended proofs of claim rather than a response to the Debtors' Claims Objection, the Debtors would have sought to have Appellants' claims disallowed for failure to follow the prescribed procedure.  A0910 ("If a claimant … fails to file and serve a timely Response in compliance with the foregoing procedures, the Debtors will present to the Court an appropriate order disallowing the Disputed Claim without further notice to the claimant."); *see Bennett,* 590 B.R.

13

at 162–63 (claim disallowed where creditor filed amended proof of claim rather than written response to debtor's claim objection).

Appellees' attempts to distinguish *Ellis* are circular as they rehash the same arguments (addressed above) about the supposedly deficient process followed by Appellants.  AB 33–34.  There is no requirement in any law or rules cited by the Debtors that Appellants were supposed to amend their claims, as opposed to presenting their evidence in the Claims Objection response and at the hearing.  *Supra* pp. 12–14.  Likewise, there is no requirement that a creditor seek Rule 2004 discovery prior to asserting claims, *supra* pp. 9–11, and nothing in *Ellis* suggests such a requirement exists.  And, finally, it was reasonable of Appellants to maintain their claims against all Debtor entities, including those in the Debtors' Generics' business, until they had an opportunity to complete discovery.  *Supra* pp. 4–7.

## II.   The Bankruptcy Court Erred in Disallowing Appellants' Claims on the Basis That They Lacked *Prima Facie* Validity.

### A.   Appellants' Proofs of Claim Were *Prima Facie* Valid.

Appellees argue that the Bankruptcy Court applied the correct standard, erroneously suggesting that Appellants are attempting to walk away from the test set forth in *Allegheny*.  AB 35.  Not so.  The point is that the Bankruptcy Court equated the first prong of *Allegheny* with the more stringent Rule 12(b)(6) standard, asking whether the proofs of claim pleaded facts "sufficient to state a claim."  A6811.  That is not the law, which makes clear that proofs of claim are not subject to the same

pleading standards as complaints in this Court. *See, e.g.*, *In re Nortel Networks, Inc.*, 469 B.R. 478, 497 (Bankr. D. Del. 2012) ("[T]he Third Circuit [has] not imposed the federal pleading standards on those seeking to file proofs of claim[.]").

Appellees also fail to address how Appellants' claims lack *prima facie* validity when the claims are the same in nature as the claim in *Payne v. Lampe (In re Lampe)*, 665 F.3d 506, 512 (3d Cir. 2011), which the Third Circuit ruled was *prima facie* valid despite acknowledging that the proof of claim contained *no* factual allegations. *Id*. Appellees characterize this ruling as non-binding dicta (AB 37) but they ignore that an issue in the appeal was whether "the Bankruptcy Court erred in holding that [the appellant's] claim was not entitled to prima facie validity" (*Id*. at 514) and that the debtor specifically argued that the claim "did not include any . . . factual explanation" (*Id*. at 512). As "a contested issue in that case" that "received the full and careful consideration of the court[,]" such ruling was not dicta. *See United States v. Mallory*, 765 F.3d 373, 383 (3d Cir. 2014). And even if it were dicta, as a "considered statement," it should not be "idly ignore[d]." *Coleman v. Greene*, 845 F.3d 73, 77 n.2 (3d Cir. 2017).

Appellees also wrongly argue that *Lampe* is "not good law" because it would have to be read to overturn the panel's decision in *In re Allegheny International, Inc*. AB 38 n.9 (citing 954 F.2d 167, 173 (3d Cir. 1992)). This argument appears to stem from Appellees' mistaken belief that the burden shifting discussion in *Allegheny* was

that court's holding. *See* AB 40–41. But *Allegheny*'s discussion of *prima facie* validity is a "commentary" on shifting evidentiary burdens, not a holding. *See Allegheny*, 954 F.2d at 173 ("Because Snyder makes this argument in the special context of bankruptcy practice with respect to proofs of claim and objections to them, we will, however, comment briefly on it."). Thus, *Lampe* did not disturb *Allegheny*.

Moreover, *Lampe* is consistent with the minimal requirements for proofs of claims not based on a writing. Bankruptcy Rule 3001(a) states: "A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). Official Form B410 contains a single line for a claimant to identify the basis for its proof of claim. *See* Official Form B410, Box 8. Only if the claim is based on a writing (it is not here), must the claimant attach anything to the proof of claim. *See* Fed. R. Bankr. P. 3001(c)(1).

Appellants claims provided more than what was required. Indeed, a separate proof of claim was filed against each Debtor identifying that Debtor individually and stating that the claim was for antitrust, racketeering and other claims related to the Debtors' pricing, marketing and sale of Acthar. The Debtors cannot claim they had doubt that this was an attempt to hold each of those entities liable for those claims, which is all that is required for fair notice.

The Debtors next argue that Appellants' proofs of claim were not *prima facie* valid because they failed to allege any conduct by specific Debtor entities. AB 36. But as discussed, the requirements for *prima facie* validity of an unliquidated litigation claim not based on a writing are minimal, and Appellants were not required to allege the specific conduct of each entity.

Moreover, Appellants were not required to allege such conduct because "longstanding" principles of antitrust law allow for group recovery against related entities engaging in concerted activity. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1236 (10th Cir. 2017); OB 38–40. Appellees do not dispute this principle but argue that it only applies in cases arising under Section 1 of the Sherman Act. AB 38. However, the authority cited by Appellants is to the contrary. In *Lenox*, for example, the court expressly rejected the argument that individualized allegations separately establishing antitrust liability against each related entity were necessary in Section 2 case. 847 F.3d at 1236.[3] In any event, Appellees' argument falls flat because Appellants asserted claims under both Section

---

[3] Appellees' attempt to distinguish *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010) (individualized antitrust allegations against separate entities not required where entities were related affiliates all in same "line" of business), also fails. Appellees argue that that case dismissed claims against certain subsidiary entities that were not involved in the same business or conduct. AB 39. But Appellees fail to address the salient point, which is that the individual entities at issue here were not involved in separate businesses or conduct; Mallinckrodt conducted its Acthar-related business on an enterprise-wide basis through numerous entities.

(Continued . . .)

17

1 and Section 2.  Finally, Appellants could not have alleged such conduct because they did not have access to that information until they were able to obtain discovery.[4]

## B.  There Was No Basis For Summarily Disallowing Appellants' Claims Without an Evidentiary Hearing.

In any event, even if a claim is not entitled to *prima facie* validity, the claimant is still entitled to present its case at an evidentiary hearing, which the Bankruptcy Court refused to allow.

Appellees concede that section 502(b) provides the exclusive bases to disallow a proof of claim, but unable to find lack of *prima facie* validity as a basis among them, Appellees ignore precedent to construct one.  Appellees first argue that section 502(b)(1), which provides that a claim may be disallowed if it "is unenforceable . . . under . . . applicable law," *see* 11 U.S.C. § 502(b)(1), incorporates bankruptcy procedural rules governing filing proofs of claim.  But the Third Circuit has recognized that section 502(b)(1)'s reference to applicable law means "applicable non-bankruptcy law."  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 n.66 (3d Cir. 2004) ("To determine whether claims are enforceable for bankruptcy purposes, [section 502(b)(1)] relies upon applicable non-bankruptcy law" and asks whether the claim would be unenforceable "outside of bankruptcy.").  Appellees and

---

[4]    Appellees focus solely on Appellants' proofs of claim and ignore the facts set forth in Appellants' response brief (A3222–A4717), which, as discussed, was what Appellants were instructed to do in order to respond to the Claims Objection.

the Bankruptcy Court have failed to identify any basis to disallow the claims under applicable non-bankruptcy law.

Moreover, even if the Debtors' reading of section 502(b)(1) were accepted (despite being contrary to Third Circuit precedent), Appellees nonetheless fail to identify any principle of bankruptcy law permitting claim disallowance based solely on lack of *prima facie* validity.  Rather, Appellees attempt again to mischaracterize *Allegheny* and subsequent case law to invent a basis for disallowing claims that does not appear in that case or in the decades of jurisprudence since *Allegheny*.  Appellees incorrectly argue that "Allegheny **held** that 'a claim that alleges facts sufficient to support legal liability to the claimant satisfies the claimant's initial obligation *to go forward*.'"  AB 40–41 (italic emphasis in original; bold emphasis added by Appellants).  Appellees go on to argue that, "[t]he **implication** is that if a claim does not "allege[] facts sufficient to support a legal liability," then the claim cannot 'go forward'—i.e., a claimant needs leave to amend or to file a new claim."  AB 41 (emphasis added).

Appellees misrepresent the quoted language as the holding of *Allegheny*, when it is not the Court's holding and, rather, as discussed above, is a *commentary* on burden shifting.  *See* supra p. 16.  And then Appellees admit that the language does not even say what they want it to say; at best, they say, it creates an

"implication."  AB 41.  But *Allegheny* nowhere says that a claimant cannot satisfy its burden to go forward by supplying evidence in response to a claim objection.

Tellingly, Appellees fail to identify a single case in the 30 years since *Allegheny* that has applied such an interpretation.  Rather, every case within the Third Circuit in the decades since *Allegheny* is contrary to the novel interpretation offered by Appellees.  *See, e.g.*, *In re Kincaid*, 388 B.R. 610, 617 (Bankr. E.D. Pa. 2008) (lack of *prima facie* validity not a basis to disallow claim under section 502(b)); *see also* OB 42–43 (collecting additional cases).[5]

Appellees' out-of-circuit precedent does not help them either.  Appellees misread *Caplan v. B-Line LLC (In re Kirkland)*, 572 F.3d 838, 840 (10th Cir. 2009), which affirmed the bankruptcy court's ruling that a claim should be disallowed because the claimant failed to produce evidence in support of the claim *at an evidentiary hearing*.  Yet Appellees assert, without explanation, that "it is clear . . . that the court's reasoning would have applied with equal force had there not been an evidentiary hearing."  AB 42 n.11.  Not so.  The Tenth Circuit relied on the record at the evidentiary hearing in disallowing the claim.  *See Kirkland*, 572 F.3d at 841 ("[T]he bankruptcy court held an evidentiary hearing.  Even then, [claimant]

---

[5]     Appellees argue that these cases are distinguishable because they deal with a failure to attach a writing when required to do so by Bankruptcy Rule 3001.  AB 43.  But Appellees offer no explanation for why failing to meet that procedural requirement of Rule 3001 differs from failing to meet any other.

produced no evidence in support of its claim and no explanation for its failure to do so.  On this record, we conclude that the bankruptcy court appropriately disallowed [claimant's] claim.").

Likewise, none of the remainder of Appellees' cases establish that a claim may be summarily disallowed without a hearing based on *prima facie* invalidity alone.  *Hilton v. Hongisto (In re Hongisto)*, 86 F. App'x 331 (9th Cir. 2004) (affirming bankruptcy court's disallowance of a claim *following a trial* where evidence was admitted on the claim); *Melillo*, 392 B.R. at 5 (claimant was offered an evidentiary hearing to substantiate its claim, and the claim was only disallowed after court offered claimant evidentiary hearing but claimant "stated that no such evidence existed"); *Henry*, 311 B.R. at 818 (recognizing the "require[ment] that the creditor be given an opportunity to provide support for the claim or amend the claim prior to disallowance"); *In re Tribune Co.*, No. 08-13141-(KJC), 2013 WL 1909617, at *2 (Bankr. D. Del. May 2, 2013) (after declining to find claim *prima facie* valid, "offer[ing] the parties the opportunity to participate in an evidentiary hearing to present evidence").  The decisions from the same court in *In re Ruth*, 473 B.R. 152 (Bankr. S.D. Tex. 2012), *In re Gilbreath*, 395 B.R. 356 (Bankr. S.D. Tex. 2008), *In re Today's Destiny, Inc.*, No. 05-90080, 2008 WL 5479109 (Bankr. S.D. Nov. 26, 2008), and *In re DePugh*, 409 B.R. 84 (Bankr. S.D. Tex. 2009), all deal with unique circumstances presented by a group of claimants who repeatedly and knowingly

ignored warnings and orders of the court in filing claims.  *Gilbreath* nonetheless recognized that lack of *prima facie* validity was not a basis to summarily disallow a claim: "Although incomplete or insufficient proofs of claim are not *prima facie* valid, they are not automatically disallowed."  395 B.R. at 364 (as amended Nov. 19, 2008).

Without the law on their side, Appellees next turn to a policy-based argument, asserting that Appellees' position would lead to a proof of claim regime that is "totally incoherent."  But it is Appellees' regime of requiring pre-claim discovery that is incoherent and unworkable, as discussed above.  *See* supra pp. 10–11.

## III.   The Bankruptcy Court Applied the Wrong Standard In Denying Appellants Leave To Amend.

In denying Appellants the opportunity to correct any alleged deficiencies in their claims, the Bankruptcy Court erred by applying the standard for asserting new, late-filed claims, rather than the correct standard for leave to amend existing claims. Appellees struggle to muster support for the Bankruptcy Court's decision, arguing only that any "amendment would have required wholly new allegations," and thus should qualify as "new, late-filed claims."  AB 46.  But the question is not whether the amendment would contain new ***allegations***, but whether it would contain new ***claims***.  Appellants' amendment would not have introduced any new claims.  Rather, it would have provided the same detail about the conduct of the Debtor entities set forth in the Claims Objection response.  *See* A6917.  Thus, any new allegations

would have simply "describe[d] [Appellants'] original claim[s] with greater particularity," which is properly characterized as an amendment, rather than a new claim. *In re FLYi, Inc.*, No. 05-20011-(MFW), 2008 WL 170555, at *2-3 (Bankr. D. Del. Jan. 16, 2008).

Had the Bankruptcy Court applied the correct legal standard, Appellants would have been entitled to leave to amend.  "[T]he Third Circuit has determined that amendments to proofs of claim ***should be allowed*** when the purpose is … to describe a claim with greater particularity." *In re Exide Techs.*, 601 B.R. 271, 291 (Bankr. D. Del. 2019) (emphasis added), *aff'd*, 613 B.R. 79 (D. Del. 2020).  Because the amendment would have been filed after the bar date, the only question is whether the amendment "relate[d] back" to the original proof of claim, which under Fed. R. Civ. P. 15(c) is met if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Id.* (quoting Fed. R. Civ. P. 15(c)(1)(B)).

Given that any amendment here clearly would have met the relation back standard, Appellees only argue that the Bankruptcy Court could have denied leave to amend based on "equitable" factors.  AB 47 n.17.  However, the inquiry under Rule 15(c) does not involve weighing of equities. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 553 (2010) (Rule 15(c) "***mandates*** relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation

back to the district court's equitable discretion") (emphasis added).[6]  Accordingly, there would have been no basis for the Bankruptcy Court to deny leave to amend.

## IV.    The Bankruptcy Court's *Pioneer* Analysis Was Erroneous.

Even if the standard for new, late-filed claims were applied, the Bankruptcy Court's application of that standard nonetheless warrants reversal.  Appellees first argue that the Bankruptcy Court's bad faith finding "independently justifies disallowance" of late-filed claims under *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 398 (1993).  As set forth above, that bad faith finding was in error; but regardless bad faith is just one of four factors that courts must consider under *Pioneer*.  *In re Queen Elizabeth Realty Corp.*, 586 B.R. 95, 106 (S.D.N.Y. 2018).

With respect to prejudice (the first *Pioneer* factor), Appellees simply repeat the Bankruptcy Court's erroneous conclusion that adding claims would have resulted in prolonged discovery and a "days-long, if not months-long, evidentiary hearing." AB 48.  There is nothing in the record that supports the faulty assumption that an estimation of Appellants pre-petition claims would have taken months.  Appellees further argue that if the Court had allowed amendment and estimation it could

---

[6]    Even if equitable factors were pertinent in this circumstance, as explained above and in Appellants' opening brief, the Bankruptcy Court heard no evidence that would have supported a finding of bad faith, delay, or prejudice.

"potentially" lead to broader discovery.  Even if so, Appellees provide no reason such discovery could not have been completed in the four-and-a-half months between the Claims Objection hearing and the plan confirmation hearing, during which time Appellants post-petition claims were adjudicated and related discovery conducted and completed.  A finding of prejudice must be based on a realistic assessment of the actual harm allowing a new claim would cause.  *In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999).  The Bankruptcy Court's ruling was not.

With respect to delay and the reason for it (the second and third *Pioneer* factors), Appellees argue that Appellants engaged in "dilatory behavior" because they "never asked for [Rule] 2004 discovery before the bar date" and did not move to compel responses to discovery requests.  AB 50.  However, as discussed above, there was no requirement that Appellees seek Rule 2004 discovery before the bar date, and Appellants in fact did seek discovery on the merits of their claims, which the Bankruptcy Court refused to grant.  OB 18–21.

Finally, Appellees argue that Appellants suffered no prejudice from disallowance of their claims because the Bankruptcy Court's decision in December denying Appellants' administrative expense claims (i.e., their claims based on post-petition conduct) would have "preclusive effect" on any claims remanded here.  AB 45.  This is wrong, and if Debtors truly believed that trial precluded Appellants' pre-

petition claims, the argument would not be buried on the last page of their brief.   As the Debtors and the Bankruptcy Court have repeatedly acknowledged, the administrative claims trial did not involve an adjudication or presentation of Appellants' pre-petition claims, Transcript of October 25, 2021 Omnibus Hearing at 113:8–18, *Mallinckrodt PLC v. Int'l Union of Operating Eng'rs Local 542 (In re Mallinckrodt)*, (Case No. 20-12522 (JTD)) (hereinafter, October 25, 2021 Hr'g Tr.).;[7] rather, as the Bankruptcy Court specifically acknowledged in its decision, the "relevant time" for its administrative claims ruling was "the post-petition period." APP8014.   Indeed, Appellees themselves emphasized the differences between their pre- and post-petition conduct as a basis for finding that Appellants did not have ***post***-petition administrative expense claims.   *E.g.*, APP7927 ("[A]s of the Petition Date, any conduct that even *appeared* to be anticompetitive in the past had already been remedied[.]."); October 25, 2021 Hr'g Tr., 102:1–5.   In short, the Bankruptcy Court's ruling on Appellants' administrative claims, which in any event is the subject of a pending appeal, in no way adjudicated Appellants' pre-petition claims.

---

[7]     The Court can take judicial notice of the transcript of the October 25, 2021 hearing, attached as **Exhibit D**. *See Copley Press, Inc. v. Peregrine Sys. (In re Peregrine Sys., Inc.)*, 311 B.R. 679, 688 (D. Del.2004) (in bankruptcy appeal, taking judicial notice of hearing transcript "[b]ecause a court may take judicial notice of 'matters of public record,' and it is not unfair to [opposing party] to do so") (citations omitted).

## <u>CONCLUSION</u>

For the foregoing reasons, Appellants request that this Court reverse the Bankruptcy Court's decision and remand with instructions to allow Appellants to present evidence in support of their claims.  In the alternative, the Court should reverse the Bankruptcy Court's decision to not allow Appellants leave to amend, or in the alternative, assert new claims, and remand with instructions to permit them to do so.

Dated: January 27, 2022
      Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Taylor M. Haga*
Donna L. Culver (Bar No. 2983)
Robert J. Dehney (Bar No. 3578)
Matthew B. Harvey (Bar No. 5186)
Matthew O. Talmo (No. 6333)
Taylor M. Haga (No. 6549)
1201 North Market Street, 16th Floor
P.O.  Box 1347
Wilmington, DE 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email:    dculver@morrisnichols.com
            rdehney@morrisnichols.com
            mharvey@morrisnichols.com
            mtalmo@morrisnichols.com
            thaga@morrisnichols.com

*-and-*

27

Matthew A. Feldman (admitted *pro hac vice*)
Matthew Freimuth (admitted *pro hac vice*)
Benjamin P. McCallen (admitted *pro hac vice*)
Richard Choi (admitted *pro hac vice*)
Philip F. DiSanto (admitted *pro hac vice*)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Email:       mfeldman@willkie.com
             pshalhoub@willkie.com
             mfreimuth@willkie.com
             bmccallen@willkie.com
             rchoi1@willkie.com
             pdisanto@willkie.com

*-and-*

Benjamin E. Waldin (admitted *pro hac vice*)
Scott C. Solberg (admitted *pro hac vice*)
James W. Joseph (admitted *pro hac vice*)
Sarah H. Catalano (admitted *pro hac vice*)
**EIMER STAHL LLP**
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Telephone:  (312) 660-7600
Email:       bwaldin@eimerstahl.com
             ssolberg@eimerstahl.com
             jjoseph@eimerstahl.com
             scatalano@eimerstahl.com

*Counsel to Appellants*

## CERTIFICATE UNDER RULE 8015(h)

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h), the undersigned attorney certifies that this brief contains 6,495 words (exclusive of this certificate, the caption, the tables of contents and authorities, and the signature block) according to the word-processing system used to prepare this brief.

*/s/ Taylor M. Haga*
Taylor M. Haga (No. 6549)