# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: MALLINCKRODT PLC, *et al.*, | : | Chapter 11 |
| | : | |
| Debtors. | : | Case No. 20-12522-JTD |

_____

| | | |
|---|---|---|
| ACTHAR INSURANCE CLAIMANTS, | : | |
| | : | |
| Appellants, | : | Civ. No. 21-1093-TLA |
| v. | : | |
| | : | |
| MALLINCKRODT PLC, *et al.*, | : | |
| | : | |
| Appellees. | : | |

_____

## **MEMORANDUM OPINION**

August 18, 2022
Wilmington, Delaware

AMBRO, *Circuit Judge*, sitting by designation

Attestor Limited and its affiliated entities, including Avon Holdings I, LLC, and Humana, Inc., ("Humana") (collectively, the "Acthar Claimants"), appeal the Bankruptcy Court's disallowance of their claims against all but two of the debtors in these consolidated cases. As the record supports the Court's decision, I affirm.

This appeal stems from Chapter 11 bankruptcy petitions filed in October 2020 by pharmaceutical company Mallinckrodt plc ("plc") and 63 of its subsidiaries (collectively, the "Debtors"). The filings were motivated primarily by a deluge of litigation relating to certain Debtors' manufacturing and distribution of opioids. But there were other costly lawsuits to contend with, including one brought by Humana (a healthcare insurer) against Mallinckrodt ARD LLC ("ARD") in August 2019. Humana's allegations related to the Mallinckrodt drug Acthar Gel, and its complaint asserted claims under §§ 1 and 2 of the Sherman Antitrust Act, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., and other laws.

The Bankruptcy Court ordered all non-opioid creditors to submit their claims against the Debtors by February 16, 2021 (a deadline known as the "bar date"). The Acthar Claimants filed duplicate proofs of claim against all 64 Debtors. In support, they attached various documents, including Humana's pre-petition complaint, and asserted that their claims "ar[ose] under or relate[d] to" the Acthar Gel litigation. App. 8. *See* App. 14–72. But those documents referenced only two Debtor entities, plc and ARD, and did not make any allegations as to the other 62 Debtors against which proofs of claim were filed.

The Acthar Claimants sought no discovery from the Debtors until a week after the bar date, sending them, on February 25, 2021, some informal document requests. In March, the Acthar Claimants joined in a motion filed by another creditor—the Official Committee of Unsecured Creditors (the "Creditors Committee")—seeking discovery against the Debtors under Bankruptcy Rule 2004. Because the Debtors and the Creditors Committee resolved their discovery disputes prior to the Court ruling on the motion, the Acthar Claimants' joinder was mooted. Still, the Debtors gave them approximately 500,000 discovery documents.

In April 2021, the Debtors filed an objection to the Acthar Claimants' proofs of claim, arguing that the vast majority were unsubstantiated. The Debtors identified "duplicate" claims filed against all 64 Debtor entities even though the attached materials only related to ARD and plc. The Acthar Claimants responded that their claims were entitled to *prima facie* validity and, alternatively, that they were entitled to discovery.

After receiving myriad documents, the Acthar Claimants filed a revised opposition, including factual assertions about several non-defendant Debtors. The Debtors again submitted that the unsubstantiated proofs of claim should be disallowed and noted that the Acthar Claimants failed to move to amend their proofs of claim. The Debtors further argued that, given the long delay in seeking discovery and the prejudice that would result if amendment were permitted, leave to amend should be denied.

The Bankruptcy Court disallowed all but two proofs of claim. It recognized that the Acthar Claimants had made specific allegations against ARD and plc (and that Debtors did not challenge the proofs of claim against those entities) but held that the other proofs of

claim failed to allege any activity by the other 62 non-defendant Debtors.  The Court also held that the Acthar Claimants' proofs of claim failed to provide the Debtors with fair notice, explaining: "[I]f the actionable claim in the complaint is against debtors A and B, how does that give notice to debtors C, D, E, F, G, H, I, J, K that there's a claim against them?  How does it give the Court the opportunity to know that there are claims against those other debtors?"  App. 6850.

It also concluded that the Acthar Claimants' conduct—in particular, their failure to seek timely discovery relevant to their claims or request leave to amend those claims—amounted to bad faith and resulted in undue delay.  The Court viewed their approach in filing the duplicate proofs of claim against every Debtor as a means of thwarting the plan of reorganization.  Consequently, the Court informed the parties that at that juncture it did not "need to hear evidence as to whether or not  there [were] claims against" any of the Debtors aside from plc and ARD.  App. 6821.  But for those two entities, it disallowed the proofs of claim without providing leave to amend or an opportunity for the Acthar Claimants to file late claims.  That decision prompted this appeal, in which the Acthar Claimants ask to reinstate 11 of their disallowed proofs of claim.

The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157(a) and 1334(a).  This Court has jurisdiction over appeals from the Bankruptcy Court per 28 U.S.C. § 158(a).  *In re Woodbridge Grp. of Cos.*, 617 B.R. 796, 801 (D. Del. 2020).  I review the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof.  *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1988).

3

The bar date for proofs of claim serves as an important deadline in bankruptcy cases. "Claims not filed by the bar date are typically discharged, meaning the claimant cannot recover from the debtor or the reorganized debtor." *Ellis v. Westinghouse Elec. Co.*, 11 F.4th 221, 232 (3d Cir. 2021). The burden to comply with the bar date is not high. *Id*. at 237. Protective proofs of claim are permitted, so a creditor who is uncertain of the amount or validity of its claim can still comply with the bar date without conceding any issues. *Id*. at 237–38.

A proof of claim filed in accord with the Bankruptcy Rules is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). It benefits from *prima facie* validity if it "alleges facts sufficient to support a legal liability." *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).[1] Bankruptcy courts are required to consult applicable non-bankruptcy law in determining the validity and amount of a proof of claim, as the determination of property rights is generally left to that law. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007).

To the extent a proof of claim fails to benefit from *prima facie* validity, most courts allow claimants to amend their claims if they can do so. *In re Shank*, 315 B.R. 799, 813–14 (Bankr. N.D. Ga. 2004). Generally, "amendments to proofs of claim should be freely allowed where the purpose is to cure defects in a claim as originally filed, to describe a

---

[1] *Allegheny* sets the burden-shifting framework that applies to proofs of claim in the Third Circuit. *In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 543 (Bankr. D. Del. 2016). "[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim." *Id.*

claim with greater particularity, or to plead new theories of recovery on facts set forth in the original claim." *In re Semcrude, L.P.*, 443 B.R. 472, 477 (Bankr. D. Del. 2011) (quoting *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 309 (3d Cir. 1999)).  However, once the bar date passes, amendments to claims are closely reviewed to ensure they are not attempts to file a new claim.  *Id.*

Courts typically apply a two-pronged inquiry when considering whether to allow post-bar-date amendments to proofs of claim.  *In re Enron Corp.*, 419 F.3d 115, 133 (2d Cir. 2005).  First, they must determine whether there was a "timely assertion of a similar claim or demand evidencing an intention to hold the estate liable."  *Id*. (quoting *In re Integrated Res., Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993)).  A post-bar-date claim satisfies this prong if it: "(1) corrects a defect of form in the original claim; (2) describes the original claim with greater particularity; or (3) pleads a new theory of recovery on the facts set forth in the original claim."  *In re FLYi*, *Inc.*, No. 05-20011, 2008 WL 170555, at *3 (Bankr. D. Del. Jan. 16, 2008) (quoting *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)).  "The focus of this test . . . is whether the initial claim provided the trustee or debtor-in-possession with reasonable notice of the later claim."  *McLean*, 121 B.R. at 708.

If the first prong is satisfied, the court must then determine whether it would be equitable to allow the amendment.  *Enron*, 419 F.3d at 133.  Among the factors considered in deciding this issue are undue delay, bad faith, or a dilatory motive.  *See Valley Media Inc. v. Borders, Inc. (In re Valley Media)*, 288 B.R. 189, 192 (Bankr. D. Del. 2003).  To avoid unnecessarily harsh results, a claimant can still file a claim after the bar date if it shows "excusable-neglect."  Fed. R. Bankr. P. 9006(b)(1).  This also is an equitable

determination; it takes into account all of the relevant circumstances regarding the movant's omission, including (1) prejudice to the debtor, (2) the length of the delay and its potential effect on judicial proceedings, (3) the reason for the delay, including whether it was in the movant's control, and (4) the movant's good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Here, the Acthar Claimants allege that the Bankruptcy Court erred by: (1) refusing to hear evidence and disallowing their claims by relying on a *sua sponte* finding, unsupported by any evidence, that their filing of protective proofs of claims against all Mallinckrodt Debtors was procedurally improper and in bad faith; (2) dismissing their claims for lack of *prima facie* validity by not "alleg[ing] facts sufficient to state a claim;" (3) refusing to allow them to introduce evidence in support of their claims before dismissing them; and (4) preemptively denying them any opportunity to amend their proofs of claim, instead considering the issue under the standard for filing "new" claims. Appellant's Opening Br. at 4-7.

As for the claims' *prima facie* validity, the Bankruptcy Court noted that the Acthar Claimants' proofs of claim failed to allege activity by any of the Debtors beyond ARD and plc; thus they failed to assert facts that would meet *Allegheny*'s sufficiency requirements. Furthermore, the Court rejected the idea that the proofs of claim provided the non-defendant Debtors with fair notice.

The Acthar Claimants argue that they did not need to allege that the non-defendant Debtors did anything because antitrust law allows for group recovery against related entities, such as wholly owned subsidiaries operating as a single enterprise. Thus, where

6

highly integrated, wholly owned subsidiaries form a single enterprise, a claimant need not establish that each specific subsidiary or entity independently violated the antitrust laws. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc*., 847 F.3d 1221, 1236 (10th Cir. 2017).

*Lenox* recognized a novel theory of monopolization or attempted monopolization claim under § 2 of the Sherman Act when the affiliated corporations' collective conduct satisfies the elements of either theory.  Plaintiffs thus need not show that every individual defendant satisfied all the elements for monopolization or attempted monopolization so long as that defendant's conduct played a role in the overall anticompetitive scheme perpetrated by the enterprise as a whole. *Id*. at 1230.  However, the *Lenox* court stated that an affiliated corporation cannot be held liable as part of the enterprise where there is no evidence that the corporation participated in the challenged conduct. *Id*. at 1236–37.  As such, the plaintiff needed to come forward with evidence that each defendant independently participated in the enterprise's scheme in order to justify holding that defendant liable as part of the enterprise.[2]

Here, the proofs of claim do not sufficiently allege facts under the theory of antitrust liability recognized in *Lenox*, as the Acthar Claimants failed to allege any conduct by any of the non-defendant Debtors, and it appears that proofs of claim were filed out of an abundance of caution.

---

[2]  *Lenox* noted that "neither this circuit nor any other has provided a clear answer to the question of what level of involvement is sufficient to meet the burden" of coming forward with evidence that each defendant independently participated in the enterprise's scheme. *Id.* at 1237.  It was unnecessary to answer the question, as Lenox's claims were ultimately barred by claim preclusion.  *Id*. at 1238.

For similar reasons, the proofs of claim also fail to allege facts sufficient to support a legal liability under both the RICO and unjust enrichment causes of action. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370–71 (3d Cir. 2010) (for a RICO claim, the plaintiff must allege that each defendant played some part in the racketeering activity); *REI Holdings, LLC v. LienClear – 0001*, C.A. No. 18-1401, 2020 WL 6544635, at *10–11 (D. Del. Nov. 6. 2020) (for an unjust enrichment claim, the plaintiff must allege that the defendant engaged in conduct related to the plaintiff's loss). Therefore, the proofs of claim cannot be said to allege facts sufficient to support a legal liability under the first prong of *Allegheny* and thus lack *prima facie* validity.

The lack of *prima facie* validity is not necessarily a ground for disallowance, and most courts allow claimants to amend their claims to the extent they can. *In re Shank*, 315 B.R. at 813–14. But "in certain circumstances claims can be disallowed for failure to support the claim with sufficient evidence, even if this is not a specifically enumerated reason for disallowance under 11 U.S.C. § 502(b) . . . ." *In re Minbatiwalla*, 424 B.R. 104, 119 (Bankr. S.D.N.Y. 2010).

Under the burden-shifting framework in *Allegheny*, the burden of proof remained on the Acthar Claimants. The Bankruptcy Court found that their proofs of claim were so deficient (save for plc and ARD) that "there were no claims asserted." App. 6919. Accordingly, it sustained the Debtors' objections to the deficient proofs of claim, and they were dismissed with prejudice. *See In re O'Brien*, 440 B.R. 654, 667 (Bankr. E.D. Pa. 2010) (finding that the lack of *prima facie* evidentiary effect through Bankruptcy Rule

8

3001(f), and the failure of the claimant to come forward with additional evidence in support of the claim, warranted disallowance).

The Acthar Claimants argue that the Bankruptcy Court was required to conduct an evidentiary hearing regardless of the claims' *prima facie* validity.  However, "where the court has an adequate factual record before it, an evidentiary hearing is unnecessary." *In re Harnischfeger Indus., Inc.*, 316 B.R. 616, 620 (Bankr. D. Del. 2003) (citing *In re Lease-A-Fleet*, 1995 WL 743666, *5–6 (E.D. Pa. 1995)).  Here, the propriety of the Acthar Claimants' proofs of claim had been previously discussed, and they were afforded ample time to conduct discovery.  Moreover, Rule 1001 of the Federal Rules of Bankruptcy Procedure requires all "rules [to] be construed . . . to secure the just, speedy, and inexpensive determination of every case and proceeding."  Fed. R. Bankr. P. 1001. Remand would "needlessly strain judicial resources, cause an unnecessary impediment to completion of the bankruptcy, and waste the parties' time and money." *Harnischfeger*, 316 B.R. at 620–21.

The Bankruptcy Court's finding of bad faith and undue delay precludes the Acthar Claimants from amending the deficient proofs of claim or filing new claims after the bar date.  In denying leave to amend, the Court emphasized there were 78 days between the order setting the bar date and that date,  plus the failure to seek leave to amend the deficient proofs of claim amounted to gamesmanship and bad faith.  App. 6820-21.  The Court questioned the Acthar Claimants' counsel to explain why his clients didn't seek Rule 2004 discovery, why they didn't request leave to amend, and why they were still maintaining proofs of claim against Debtor entities that they knew were not involved in the alleged

9

Acthar Gel scheme. The response was that the Acthar Claimants needed further discovery to determine whether they could dismiss the claims. The Bankruptcy Court pointed out that the Acthar Claimants had months to do so, and the only reason the Court could conjure why they didn't was to hold up the Debtors' proposed plan of reorganization by maintaining claims against them without any basis.

The Bankruptcy Court also heard arguments on whether the Acthar Claimants should be granted leave to amend. It found that because the proofs of claim as filed failed to state any claim against the non-defendant Debtors, a motion for leave to amend would be akin to a motion to file a late claim and would require applying the excusable-neglect standard of *Pioneer*. Under that standard, the Court held that granting leave to file new claims after the bar date would have an adverse effect on the cases given the substantial time that it would take for discovery and an estimation hearing to determine their validity and amount.

The Court further noted that it had been nine months since the cases were filed, eight months since the bar date notice went out, and almost six months since the bar date passed, all with no attempt to seek to amend the proofs of claim. It also ruled that the Acthar Claimants' reasons for delay did not favor allowing the late-filed claims, citing their failure to seek Rule 2004 discovery before the bar date and compel discovery that they claimed was not forthcoming. Consequently, it disallowed the proofs of claim without granting leave to amend or file new claims.

The Acthar Claimants argue that the Bankruptcy Court erred in its analysis of *Pioneer* by not following the elastic equitable approach that the decision emphasized courts

must take.  However, the record shows that the Court took the *Pioneer f*actors into consideration and concluded that the prejudice to the Debtors, the undue delay without an explanation, and the findings of bad faith and dilatory motive barred the Acthar Claimants from being granted leave to file new proofs of claim.

I review the Bankruptcy Court's denial of leave to amend a timely filed proof of claim, and denial of leave to file a late claim, for abuse of discretion.  *Enron*, 419 F.3d at 124.  A decision stands under that standard "unless 'no reasonable person would adopt the lower court's view.'"  *In re SemCrude, L.P.*, 428 B.R. 590, 593 (D. Del. 2010) (alteration adopted) (quoting *Hanover Potato Prods. v. Shalala*, 989 F.2d 123, 127 (3d Cir. 1993).  As I defer to a bankruptcy court's reasonable interpretation of the factual record before it, *Ford v. Temple Hosp.,* 790 F.2d 342, 347 (3d Cir. 1986), I glean no reason not to defer.  Hence, I conclude it was not an abuse of discretion for the Court to deny the Acthar Claimants leave to amend their deficient protective proofs of claim or file post-bar-date claims.

For these reasons, I affirm.